UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 17-32186 (MI) |
| UPLIFT RX, LLC | § | |
| | § | CHAPTER 11 |
| Debtors | § | |
| | § | (Jointly Administered) |
| YVETTE AUSTIN SMITH, LIQUIDATING | § | |
| TRUSTEE OF THE ALLIANCE HEALTH | § | |
| LIQUIDATING TRUST, | § | ADVERSARY NO. 22-03275 (MI) |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BAKER & HOSTETLER LLP, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT BAKER & HOSTETLER LLP'S
## MOTION TO WITHDRAW THE REFERENCE[1]

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

This complex jury-trial case belongs immediately in the District Court which should hear all pre-trial and dispositive motions – efficiently once, not on duplicative reviews of reports and recommendations. Any claim that is not dismissed will be tried to a jury in a multi-week trial that likely would not occur until at least two years from now given current Houston dockets. Eight of Plaintiff's nine purported claims are based entirely on events *before* Alliance's bankruptcy, so all evidence will be fresh to any court. Seven of the nine are based on non-bankruptcy federal or state law. Two are non-bankruptcy federal RICO and RICO conspiracy claims that require withdrawing

---

[1] If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.

the reference because they involve interpreting complex non-bankruptcy federal statutes which Plaintiff seeks to apply in novel ways that fail to state claims under Fed. R. Civ. P. 12(b). The other five are non-core state-law claims having nothing to do with bankruptcy. Only two claims are core: seeking avoidance of Baker's pre-petition fees and turnover of Baker's post-petition fees this Court already approved and thus are facially barred by *res judicata*.

Given the hundreds of millions of dollars at issue, any final order or judgment – including rulings on pre-trial and dispositive motions – will be appealed as far as possible. It would be judicially and financially inefficient to insert a second stage of review by having this Court issue reports and recommendations which undoubtedly will be challenged in the District Court no matter who wins. And it likewise would be inefficient for this Court to spend its resources gaining familiarity with a case that another court must try. Thus, the reference should be withdrawn, and in the interest of efficiency, ***it should be withdrawn now***. Accordingly, Defendant Baker & Hostetler LLP ("Baker") moves to withdraw the reference under 28 U.S.C. § 157(d), Article III of the Constitution, Federal Rule of Bankruptcy Procedure 5011, and Local Rule 5011-1.

## I.   BACKGROUND

The Court will recall that Baker served as Debtors' counsel in the Alliance bankruptcy, the Court approved Baker's post-petition fees, and that the original trustee for the Alliance Health Liquidating Trust, Dallas-based Mark Shapiro, resigned prior to this case being filed.

Now, a different trustee, New York-based Yvette Smith, standing in Alliance's shoes as a self-confessed RICO enterprise, seeks to use federal courts to launder and assert purportedly assigned RICO claims of the three largest creditors, LifeScan, Inc. ("LifeScan"), Roche Diagnostics Corp., and Roche Diabetes Care, Inc. (collectively, "Roche"), who couldn't sue Baker directly for the pre-petition legal services Baker rendered to Alliance. Plaintiff also seeks turnover

and/or disgorgement of Baker's post-petition fees which this Court already approved, and thus are barred by *res judicata*.

On September 26, 2022, Plaintiff, the liquidating trustee for the Alliance Health Liquidating Trust, filed her complaint asserting claims on behalf of the Debtors and as the purported assignee of LifeScan and Roche. *See* Complaint, Adv. Dkt. 1. Plaintiff alleges that Alliance (in whose shoes she stands) conducted a multi-year insurance fraud scheme giving rise to tens of thousands of RICO violations that led to the Alliance bankruptcy.[2]

The Complaint asserts (but fails to state) nine claims; five directly on behalf of the Debtors/Liquidating Trust Estate and four by assignment from LifeScan and Roche: (Count I) professional negligence/legal malpractice (direct); (Count II) aiding and abetting breach of fiduciary duty (direct); (Count III) contribution (direct); (Count IV) avoidance and recovery of certain pre-petition payments of attorneys' fees and expenses (direct); (Count V) objection to post-petition claim and turnover and/or disgorgement of post-petition fees (direct); (Count VI) aiding and abetting negligent and/or fraudulent misrepresentation (by assignment from LifeScan and Roche); (Count VII) fraud (by assignment); (Count VIII) conspiracy to violate the federal RICO statute (18 U.S.C. § 1962(d)) (by assignment); and (Count IX) violation of the federal RICO statute (18 U.S.C. § 1962(c)) (by assignment). *See* Complaint, pp. 78-101.

## II.   ARGUMENT AND AUTHORITIES

Baker respectfully urges the District Court to immediately withdraw the reference of its jurisdiction to the Bankruptcy Court under 28 U.S.C. § 157(d) and FED. R. BANKR. P. 5011,

---

[2] On April 7-9, 2017 (the "Petition Date"), the debtors (collectively, "Alliance" or the "Debtors") filed voluntary chapter 11 petitions. This Court confirmed the Debtors' Amended Joint Plan of Liquidation (the "Plan") (Case No. 17-32186, Dkt. 1267, Ex. A) on August 8, 2019, and the Plan became effective on September 13, 2019 (the "Effective Date"). *See* Case No. 17-32186, Dkt. 1319. Under the Plan, the Debtors purported to transfer and assign all Liquidating Trust Assets to the Alliance Health Liquidating Trust ("Liquidating Trust") as of the Effective Date.

because:  (a) withdrawal is mandatory under 28 U.S.C. § 157(d) since Plaintiff asserted claims for relief that will require substantial and material consideration of the federal RICO statute; and (b) alternatively, the reference should be withdrawn for cause because the goals of judicial economy, efficiency, and economical use of all parties' resources would be best served if the District Court hears all matters in this case, up to and including any jury trial.

The scope of the Bankruptcy Court's authority over referred cases is limited both by § 157 and by the United States Constitution.   Recognizing those limits, 28 U.S.C. § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of a party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

## A.    Withdrawal Is Mandatory.

Plaintiff's Complaint requires substantial and material consideration of both title 11 (including the impact, if any, of Plaintiff's status as a liquidating trustee and the avoidance and turnover claims in Counts IV and V) and other laws of the United States regulating organizations or activities affecting interstate commerce (specifically, the RICO claims in Counts VIII and IX).[3] Withdrawal of the reference thus is mandatory.

---

[3] *See U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992) (explaining that, in assessing mandatory withdrawal, "the court must . . . consider (a) whether this adversary proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (b) whether the non-Code federal law has more than a *de minimis* effect on interstate commerce; and (c) whether the motion for mandatory withdrawal was timely").  *See also Burger King Corp. v. B-K of Kansas, Inc.*, 64 B.R. 728, 731 (D. Kan. 1986) (finding that RICO "claims will require consideration of laws regulating activities affecting interstate commerce"); S.D. Tex. Gen. Order 2011-12, ¶ 1 ("In an adversary proceeding, a party should move to withdraw the reference within 90 days of the complaint or notice of removal").

"Since its enactment in 1970, [RICO] has been one of the most controversial of federal statutes." RICO: CIVIL AND CRIMINAL LAW STRATEGY § 1.01 (footnote omitted).  Although "many of the fundamental questions regarding RICO's scope and power were resolved" during the 1990s, "the statute remains difficult to apply because its terms are artificial and not easily correlated with everyday experiences."  *Id*; *see also* 1 MANUAL OF FOREIGN INVESTMENT IN THE U.S. § 7:22 (3d ed.) (describing RICO as "perhaps the most controversial, and certainly one of the most complex" federal statutes). Plaintiff's RICO claims require far more than the application of an already complex RICO statute to new facts; they require substantial and material consideration of disputed issues concerning the scope of RICO and whether it can be applied in this case.

First, because Plaintiff has not sued any individual Baker attorneys, Plaintiff's RICO claims require the Court to consider whether vicarious liability exists – at all – under RICO, and to wade through unclear statutory provisions and years of conflicting precedent on that topic.[4] Importantly, Baker's alleged involvement with Alliance's alleged RICO "enterprise" is solely through the alleged advice given by the Baker attorneys who represented Alliance, and the service of a Baker partner, Lee Rosebush, on Alliance's board of directors.  *See* Complaint, ¶¶ 362, 379, 382.

Resolving Baker's potential liability under RICO requires substantial and material consideration of whether vicarious liability is a viable theory under RICO, because Baker's involvement, if any, was solely through attorneys Baker employed.  Because courts and

---

[4] *See* 6 LAW SEC REG. § 22:19, n.8 (compiling numerous conflicting cases addressing whether vicarious liability can be a viable theory for civil RICO liability, and, if so, under what circumstances); Philip A. Lacovara, Vicarious Criminal Liability of Organizations: RICO as an Example of a Flawed Principle in Practice, 64 ST. JOHN'S L. REV. 725, 766–67 (1990) "Courts are split on whether legitimate businesses may be held vicariously liable under RICO for the misconduct of their employees, and if so, what standard should apply."  Although not before the Court in the present motion, Baker respectfully submits that the better rule is that "*respondeat superior* can *never* be the basis of liability for a civil RICO suit."  *First Nat. Bank of Louisville v. Lustig*, 727 F. Supp. 276, 280 (E.D. La. 1989) (emphasis in original).

commentators disagree whether vicarious liability is a viable legal theory under RICO (and, if so, when it might apply), resolving Plaintiff's RICO claims will require considering and construing RICO, not merely its application, which mandates withdrawing the reference.

Second, because Plaintiff admits that Alliance (in whose shoes she stands) was a RICO enterprise, *see* Complaint ¶¶ 355 and 372, the District Court will need to consider whether bankruptcy impacts the application of RICO and whether *in pari delicto* bars Plaintiff's suit.  *See Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC,* 566 B.R. 815, 843 (W.D. Tex. 2017) (dismissing liquidating trustee's civil RICO claims against an attorney and law firm that had represented the debtor because "the debtor company [], through the acts of its agent [], bears equal responsibility for the RICO violation it now seeks to redress").

Baker fully expects Plaintiff to contest the application of *in pari delicto* to her RICO claims on grounds similar to those the court rejected in *Brickley*,[5] but that forthcoming dispute will require the District Court to engage in substantial and material consideration of both title 11 and non-bankruptcy federal law, which independently mandates withdrawing the reference.

Third, Plaintiff's RICO claims require substantial and material consideration of whether there is a "direct relation between the injury asserted and the injurious conduct alleged."  *See Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 271 (1992)).  Here, Baker expects that Plaintiff, as a purported assignee of claims from the test-strip manufacturers (LifeScan and Roche), will be

---

[5] In *Brickley*, the debtor's confirmed plan appointed a trustee to pursue causes of action for the benefit of the trust beneficiaries.  *Id*. at 827.  The trustee brought RICO claims against the debtor's pre-petition lawyer and law firm alleging that the lawyer had "'made multiple misrepresentations and fraudulent statements'", including "allegedly corroborat[ing] [the officers'] fraudulent statements and ma[king] further fraudulent statements to investors and lenders."  *Id*. at 843.  The court granted the law firm defendants' motion to dismiss the RICO claim based on *in pari delicto*, because, among other things, "the trustee, although himself an innocent actor, stands in the shoes of the debtor company" which "bears equal responsibility for the RICO violation it now seeks to redress."  *Id*. at 843-44.

unable to prove that Alliance's alleged statements to pharmacy benefit managers (*i.e.*, not LifeScan and Roche) caused direct, rather than indirect, harm.  Under Supreme Court precedent including *Hemi*, allegations such as Plaintiff's fail to satisfy the requirement of a "direct relationship" of causation.  *See id.* at *4, 10-11 (holding that defendant's alleged failure to file sales reports with New York State did not support a RICO claim on behalf of New York City, because the City's alleged injury did not occur "by reason of" the defendant's alleged RICO violations).  Accordingly, Baker expects to argue that LifeScan and Roche never had valid RICO claims, and thus could not assign any such claims to Plaintiff.  Again, Plaintiff will probably dispute Baker's arguments, which underscores that withdrawal is mandatory.

Finally, there are persuasive authorities – not cited by Brown & Fortunato, P.C. in its motion to withdraw the reference[6] – finding that complex, numerous, or novel RICO allegations mandate withdrawing the reference.[7]  *See e.g. Harlow v. Wells Fargo & Co.*, No. 5:20-CV-00046, 2022 WL 2231602, at *2 (W.D. Va. June 21, 2022) (finding withdrawal mandatory where "plaintiffs' RICO claim center[ed] on Wells Fargo's alleged practice of filing false notices of mortgage forbearance, impacting 'at least 904 chapter 13 debtors' . . . . [which] appears to involve a novel application of RICO" and involved "numerous and novel RICO claims"); *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995) (finding withdrawal mandatory where the complaint alleged RICO violations "on at least 100 occasions over the course of seven and a half years . . . . necessitat[ing]

---

[6] *See Shapiro v. Brown & Fortunato, P.C.*, Adv. No. 21-03936, Dkt. 22, ¶¶ 14-19 (Brown & Fortunato's motion to withdraw the reference cited antitrust, patent, and CERCLA cases, but no RICO cases, in support of mandatory withdrawal.); *id.* at Dkt. 49, p. 9 (This Court's related Report and Recommendation found that "[Brown & Fortunato] offer[ed] no argument or authority contrary to [the] conclusion" that "[t]he Trustee's RICO claim requires only a straight-forward application of federal law").

[7] Plaintiff's Complaint undoubtedly meets this standard; among other things, the Complaint alleges that "the [Alliance] Scheme Participants' racketeering acts were multiple and repeated, ***with tens of thousands of acts occurring every year*** from 2011 until Alliance's bankruptcy in 2017" and that "Baker committed and/or aided and abetted the commission of two or more of these racketeering acts in violation of 18 U.S.C. §§ 2, 1341, and/or 1343."  Complaint, ¶¶ 360, 362, 377, 383 (emphasis added).

the substantial and material consideration of RICO, which triggers the mandatory withdrawal provision of § 157(d)").

Accordingly, the reference must be withdrawn under 28 U.S.C. § 157(d).

**B.      Alternatively, the Court Should Withdraw the Reference for Cause.**

Alternatively, the reference should be withdrawn under the multi-factor test applicable to discretionary withdrawal in the Fifth Circuit, which examines whether:

> (1) the underlying lawsuit is a non-core proceeding; (2) uniformity in bankruptcy administration will be promoted; (3) forum shopping and confusion will be reduced; (4) economical use of debtors' and creditors' resources will be fostered; (5) the bankruptcy process will be expedited; and (6) a party has demanded a jury trial.

*In re MPF Holding US LLC*, No. 08-36084-H4-11, 2013 WL 12146958, at *1 (Bankr. S.D. Tex. Apr. 26, 2013) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985)).

Moreover, the reference should be withdrawn ***now***, with the District Court handling all pretrial matters, in light of the "majority of noncore claims, and the necessity of de novo review of a significant number of issues [if the Bankruptcy Court were to handle pretrial matters] . . . ." *See, e.g., Curtis v. Cerner Corp.*, No. 7:19-CV-00417, 2020 WL 1983937, at *4 (S.D. Tex. Apr. 27, 2020) (Alvarez, J.). The sheer complexity of Plaintiff's 102-page Complaint and its nine causes of action – seven of which are undisputedly non-core – strongly supports an immediate withdrawal of the reference to preserve judicial resources. *See In re Royce Homes, L.P.*, No. 09-32467-H4-7, 2011 WL 13340482, at *5 (Bankr. S.D. Tex. Oct. 13, 2011) (Bohm, J.) (recommending immediate withdrawal of the reference because the adversary complaint was voluminous with numerous causes of action and "[j]udicial efficiency and economy would be disserved if the District Court deferred withdrawal of the reference and allowed the undersigned judge to resolve all pre-trial disputes").

### 1. This Case Involves Predominantly Non-Core Claims.

As noted above, seven of Plaintiff's nine counts are non-core claims based on federal or state law.  The two core claims – Count IV (Avoidable Transfers) and Count V (Objection to Post-Petition Fees) – are ancillary and have little bearing on the main issues in dispute.

The overwhelmingly "non-core" nature of Plaintiff's claims supports discretionary withdrawal of the reference, and the two core claims do not suggest otherwise. *See, e.g., Curtis*, 2020 WL 1983937, at *2 ("Where the majority of claims are noncore, 'withdrawal of the reference is favored.'"); *see also Holland America*, 777 F.2d at 998 ("The cumulative effect of the grant of original jurisdiction to the district court and its right to withdraw the reference in a bankruptcy case or related matter or to refer bankruptcy-related matters to the bankruptcy court leaves little doubt that the district court may exercise jurisdiction broadly, even over 'core' bankruptcy matters").

Thus, because non-core claims predominate, cause exists to withdraw the reference.

### 2. Withdrawal Is Consistent with Uniformity in Bankruptcy Administration.

The Court already confirmed the Plan, so withdrawal will not affect uniformity in bankruptcy administration.  Further, the Court does not possess expertise over Plaintiff's non-core claims and denying withdrawal would not promote uniformity.  *See Curtis*, 2020 WL 1983937, at *3 (S.D. Tex. Apr. 27, 2020) ("[T]he mostly noncore nature of the claims indicates that the Bankruptcy Court does not possess the resident expertise and uniformity in bankruptcy administration would not be promoted by declining to withdraw the reference."); *In re MPF Holding US LLC*, 2013 WL 12146958, at *2 ("This Court has not held an evidentiary hearing in this Adversary Proceeding. The Court has not gained any familiarity with the underlying facts in the Adversary Proceeding. Therefore, the [uniformity in bankruptcy administration] factor favors withdrawal of the reference").

### 3.        There Is No Forum Shopping or Confusion.

The third factor, reducing forum shopping and confusion, is also satisfied here. Withdrawing the reference will not encourage forum shopping because the jury trial must occur in, and any final orders or judgments must issue from, the District Court.  Substantially all of Plaintiff's claims focus on pre-petition occurrences and are unrelated to Baker's involvement in the underlying bankruptcy before this Court.  *See e.g. Curtis*, 2020 WL 1983937, at *3 ("[T]here are no indicia of forum shopping because most of the claims alleged against Defendants are unrelated to the Defendants' involvement in the bankruptcy proceeding.") (internal citations omitted).

Likewise, immediate withdrawal will reduce the risk of confusion because withdrawal will result in a single court hearing all of the issues ***once***, instead of asking the District Court to rely on reports and recommendations from this Court coupled with the parties' dueling arguments on what happened and why. *See e.g. In re Royce Homes, L.P.*, 2011 WL 13340482, at *5 ("Given the sheer volume of the First Amended Complaint, and the numerous causes of action pleaded therein, confusion will be minimized if the District Court immediately withdraws the reference and adjudicates this dispute. Accordingly, this third factor weighs in favor of withdrawal of the reference").

### 4.        Withdrawal Will Foster Economic Use of Resources and Judicial Economy

Withdrawal will promote the most efficient use of judicial resources where there are clearly core and non-core issues that must be decided to resolve the case.  *See In re Dallas Roadster, Ltd.*, No. ADV 13-4033, 2013 WL 5758632, at *2 (Bankr. E.D. Tex. Sept. 27, 2013), report and recommendation adopted, No. 11-43725, 2013 WL 5769916 (E.D. Tex. Oct. 21, 2013) ("When core and non-core matters are raised in the adversary proceeding, withdrawal of the reference promotes the most efficient use of judicial resources").  In addition, there will be no lost work by

the Bankruptcy Court because this case was filed approximately one month ago, there have been no hearings, and Baker's response to the Complaint is not even due until January 13, 2023.

Immediate withdrawal will be most efficient by eliminating the need for the District Court to conduct a *de novo* review of proposed findings and conclusions issued by the Bankruptcy Court (only one court would need to consider the action, not two). *See e.g. In re: Brown Med. Ctr., Inc.*, No. BR 15-3229, 2016 WL 406959, at *1 (S.D. Tex. Feb. 3, 2016) (Atlas, J.) (finding good cause to immediately withdraw the reference to the district court, in part because, "the district court can rule promptly on pending motions, and can thereby avoid duplicative work that would occur if the motions are decided by the bankruptcy court followed by an appeal to this court."); *Curtis*, 2020 WL 1983937 at *4 ("Because noncore claims significantly outweigh core claims, judicial and litigant economy favor determination of the claims by the District Court once. This factor weighs in favor of withdrawal").

Moreover, because the District Court must preside over the jury trial on any claims that survive dismissal, it would be a waste of judicial resources for this Court to spend its time resolving pretrial matters, only for those efforts and knowledge to be lost when the case goes to the District Court for trial. Instead, the better course is for the District Court to gain familiarity with the case **now**. *See In re MPF Holding US LLC*, 2013 WL 12146958, at *3 ("The undersigned judge believes that immediate withdrawal of reference will serve the interests of judicial economy and conservation of resources because it will allow the District Court to gain familiarity with the facts of this Adversary Proceeding before trial").

### 5.     Withdrawal Will Expedite the Bankruptcy Process.

For similar reasons, withdrawing the reference now will expedite the bankruptcy process. Indeed, if the reference is not withdrawn, adjudication of Plaintiff's claims will be slower due to this Court having to submit reports and recommendations to the District Court. Because the District

Court would have to review these recommendations *de novo*, "there is no reason not to do now what must be done eventually."  *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 473 (S.D.N.Y. 2011); *see also In re MPF Holding US LLC*, 2013 WL 12146958, at *3 ("If the District Court withdraws the reference, it may immediately enter a final judgment, thereby expediting the bankruptcy process").

Finally, the Plan was confirmed over three years ago and "there is no longer any estate to administer, which means that there will be no delay in the administration of the estate if the District Court adjudicates the suit." *In re MPF Holding US LLC*, 2013 WL 12146958, at *3

### 6.    Plaintiff Has Demanded a Jury Trial, as Will Baker.

Plaintiff has already demanded a jury trial on all issues and does not consent to a jury trial before this Court.  Complaint, ¶ 392.  Baker will demand a jury trial and does not consent to a jury trial or final orders or judgments by the Bankruptcy Court.  This weighs heavily in favor of withdrawing the reference.  *See In re MPF Holding US LLC*, 2013 WL 12146958, at *3 (finding defendant's demand for a jury trial "weigh[ed] heavily in favor of withdrawal of the reference").

### III.    CONCLUSION

Baker respectfully urges the District Court to: (1) grant this Motion; (2) withdraw the reference under General Order 2012-6 for this entire case immediately; (3) conduct all proceedings in this case (both pretrial and trial) in the District Court; and (4) grant Baker such other and further relief as may be appropriate.

Respectfully submitted,

*/s/  George M. Kryder*
George M. Kryder
  State Bar No. 11742900
  gkryder@velaw.com
Matthew W. Moran
  State Bar No. 24002642
  mmoran@velaw.com
Jordan W. Leu
  State Bar No. 24070139
  jleu@velaw.com
Michael C. Lee
  State Bar No. 24109461
  mlee@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas  75201
Telephone: (214) 220-7700

*Attorneys for Baker & Hostetler LLP*

## CERTIFICATE OF CONFERENCE

I certify that on October 14, 2022, I conferred with counsel to Plaintiff, David Cimo, who advised that Plaintiff opposes withdrawal of the reference to the District Court for pretrial matters, and wishes to have the Bankruptcy Court decide all matters until the case is trial-ready.

*/s/  George M. Kryder*
George M. Kryder

## CERTIFICATE OF SERVICE

I certify that on November 8, 2022, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

*/s/  George M. Kryder*
George M. Kryder

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO.  17-32186 (MI) |
| UPLIFT RX, LLC | § | |
| | § | CHAPTER 11 |
| *Debtors* | § | |
| | § | (Jointly Administered) |
| YVETTE AUSTIN SMITH, LIQUIDATING | § | |
| TRUSTEE OF THE ALLIANCE HEALTH | § | |
| LIQUIDATING TRUST, | § | ADVERSARY NO. 22-03275 (MI) |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| BAKER & HOSTETLER LLP, | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION ON DEFENDANT BAKER & HOSTETLER
LLP'S MOTION TO WITHDRAW THE REFERENCE**

The Court, having considered Baker & Hostetler LLP's Motion to Withdraw the Reference

(the "Motion") and the materials on file, recommends that the Motion should be GRANTED as

follows:

1.     The Referral under General Order 2012-6 to the Bankruptcy Court should

immediately be withdrawn for the above-captioned Adversary Proceeding; and

2.     The District Court should conduct all proceedings in the Adversary Proceeding

(both pretrial and trial).

Dated: _____, 2022
Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE